

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. 0-5209
Re: Mode of depositing funds
received from the leasing
of escheated realty.

Your letter of June 30, 1943, reads as follows:

"I have for deposit a check for $611.70 and
a check for $16.81, reaching this department under
a judgment in escheat proceedings dated June 15,
1943, covering lots 4 and 5 in block 231, Campbell
Addition to the City of El Paso, Texas, which lots
were adjudged as escheated to the state. The checks
represent funds received from the leasing of such
lots. Since a writ of possession will not issue on
this land until two years from the date of judgment
and since the proceeds are liable for a suit of re-
covery during such period of two years, I am re-
questing your opinion as to a proper deposit of
these checks in the State Treasury. Article 3281,
R. C. S., directs that all money coming to the
state from escheated estates be deposited by the
Commissioner of the General Land Office in the Per-
manent School Fund. This makes it necessary for an
appropriation to be made before a refund may be
made to any heir entitled to the same. The ques-
tion may arise as to whether or not the Legisla-
ture may appropriate from the Permanent School
Fund for the purpose of this refund, however, that
question is not now before this department.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Geo. H. Sheppard, Page 2

"The question has arisen as to whether the money should be placed in a suspense account in the State Treasury for the two-year period similar to the accounts placed in the State Treasury under Articles 3644 and 3652.

"The funds placed in the State Treasury under Articles 3644 and 3652 under the settlement of estates, and the funds placed in the State Treasury under the statutes relating to escheats of property under Article 3272, et seq., are discussed under the case of Manion v. Lockhart, State Treasurer, 114 S. W. (2d) 216.

"It occurs to this department that the deposit of these escheated funds should be made by the Commissioner of the General Land Office."

Lands escheating to the State of Texas are by statute placed under the management of the Commissioner of the General Land Office. Article 3281 V.A.C.S. After vesting in this official certain powers with respect to the leasing and sale of escheated lands, Article 3281 provides:

"All sums received from the leasing, mineral developments, or sale of escheated lands shall be deposited in the Permanent School Fund of Texas."

Where land belonging to a deceased person has escheated because of a supposed lack of heirs, our statutes make provision whereby any such heirs may subsequently recover the land and the proceeds therefrom. Thus at the time that land is judicially declared to be escheated, the issuance of a writ of possession is withheld for a period of two years, Article 3279, and during such two year period any claimant not served in the escheat proceedings may sue and recover such land, Article 3283. Moreover, Articles 3286 and 3287 provide:

"Article 3286. If any person appears after the death of the testator or intestate and claims any money or property paid into the treasury under this Title, as heir, or devisee, or legatee thereof, he may file a petition against the State in the

District Court of Travis County, Texas, stating the nature of his claim and praying that such money be paid to him. A copy of such petition shall be served on the Attorney General of this State at least twenty (20) days previous to the return day of the process. Any such suit shall be instituted within four (4) years of the date of the final judgment escheating such property to the State, and not thereafter.

"Article 3287. If the court shall find that such person is entitled to recover such money as heir, devisee, legatee, or legal representative, it shall make an order directing the Comptroller to issue his warrant on the Treasury for the payment of the same, but without interest or costs; a copy of which order under the seal of the court shall be sufficient voucher for issuing such warrant."

It is obvious that if the funds in your hands are placed immediately in the Permanent School Fund, a claimant can obtain such funds, if at all, only by a legislative appropriation. Such treatment would in effect make a nullity of the procedure established in Articles 3286 and 3287 since any judgment obtained thereby would be unenforceable in the manner therein provided. In view of the explicit language of Article 3287, we cannot believe that the Legislature intended that such funds should be placed in a position from which they can be recovered only by legislative enactment.

Article 4388 provides:

"The State Treasurer shall receive daily from the head of each Department, each of whom is specifically charged with the duty of making same daily, a detailed list of all persons remitting money the status of which is undetermined or which is awaiting the time when it can finally be taken into the Treasury. . . . . A deposit receipt shall be issued by the Comptroller for the daily total of such remittances from each Department; and the cashier of the Treasurer's Department shall keep a cash book, to be called 'suspense cash book," in which to enter these deposit

Honorable Geo. H. Sheppard, Page 4

receipts, and any others issued for cash re-
ceived for which no deposit warrants can be
issued, or when their issuance is delayed. As
soon as the status of money so placed with the
Treasurer on a deposit receipt is determined,
it shall be transferred from the suspense ac-
count by placing the portion of it belonging to
the State in the Treasury by the issuance of a
deposit warrant, and the part found not to be-
long to the State shall be refunded . . . . Re-
funds shall be made in a manner similar to that
in present use, except that separate series of
warrants shall be used for making such refunds,
to be called 'refund warrants,' and such warrants
shall be written and signed by the Comptroller
and countersigned by the Treasurer and charged
against the suspense funds to which they apply.
. . . . ."

In our opinion the provision in Article 3281 relat-
ing to the deposit in the Permanent School Fund of receipts
from escheated property is to be read in connection with and
in harmony with the provisions of Articles 3286 and 3287.
When the statutes are so read, it is our opinion that the
possibility that funds from escheated property may be re-
covered by qualified claimants makes such funds "money the
status of which is undetermined or which is awaiting the time
when it can finally be taken into the Treasury" within the
language of Article 4388. Consequently, we feel that these
funds should be placed in a suspense account under the latter
Article, and that they should be so held until they are re-
funded to successful claimants, as provided in Article 3287,
or until the expiration of the period of time provided in Ar-
ticle 3286. If the money has not been refunded at the expira-
tion of such period of time, it should then be transferred
from the suspense account into the Permanent School Fund.

In reaching this conclusion we are not unaware of
the case of Manion v. Lockhart, 114 S.W. (2d) 216. In that
case the State Treasurer deposited certain funds comprising
unclaimed estates under Articles 3644-3660 in the General
Fund, and certain claimants who had established their right
to such funds in appropriate proceedings were seeking mandamus

to compel the Treasurer to refund the moneys involved. Although the Supreme Court concluded that the money had been wrongfully deposited in the General Fund and that it should have been placed in a suspense account, the Court refused the application for mandamus on the ground that the issuance of the writ would be futile since the money could be obtained only by a legislative appropriation. In the course of the argument in this case, counsel for one side apparently assumed that escheated funds are not to be held in suspense and urged that the Court treat funds from unclaimed estates in the same fashion. In rejecting this contention the Court seemingly accepted the assumption of counsel with respect to escheated funds, for it said at pp. 217-218:

> "It is also contended that the statutes relating to the escheat of property, article 3272 et seq., Vernon's Ann. Civ. St., are applicable and should be considered in the construction of the articles now before us. After providing for the escheat of property and the sale of same by the sheriff, the law also commands the sheriff to 'pay the proceeds of such sale less the costs of the court, into the State Treasury.' Article 3282.

> " . . . .

> "The object of the escheat statutes is to vest title to the property escheated in the state, and they provide a method for its recovery. They also provide that any claimant of the property may within a certain period file suit in the district court of Travis county against the state for such property, or money so escheated, and fix a maximum period of time for such suit.

> "Prior to the enactment of article 3644 et seq., the law provided that where funds derived from property sold under the law, and 'the funds have been paid into the State Treasury,' those entitled to such property could file suit and recover judgment therefor; and the order of the court would be sufficient authority for the State Treasurer to pay over the amount. See Paschal's Digest, arts.

Honorable Geo. H. Sheppard, Page 6

5755 to 5763; Gammel's Laws of Texas, Vol. 6, pp. 355 and 356.

"The previous law was amended by the enactment of article 3644 et seq., under which this cause arose, and those articles now provide that funds derived from the proceedings thereunder shall be 'paid to the State Treasurer,' and not 'into the State Treasury,' as demanded under the escheat statutes, article 3272 et seq., and under the provisions of the old law. See Paschal's Digest, arts. 5755 to 5763, and Gammel's Laws, Vol. 6, pp. 355 and 356.

"We have briefly pointed out the difference in the language used in articles 3644 to 3660 as compared with the language used in the prior laws, articles 5755 to 5763, Paschal's Digest, and in the articles relating to the escheat of property, articles 3272 to 3289. It clearly appears from the language used in article 3644 et seq., that all the funds are to be paid to the State Treasurer, and not into the state treasury. The law also provides that the treasurer shall issue his receipt therefor, and same shall be filed with the clerk of the court, and such receipt shall be recorded in the minutes of the court. It also provides that any person claiming such funds paid the treasurer under the provisions of this law shall institute suit, in the county court in which the estate is administered, against the State Treasurer for the amount claimed; and a certified copy of the judgment entered therein shall be sufficient authority for the treasurer to pay same.

"A careful analysis of the objects sought to be attained by the passage of these articles, 3644 to 3660, clearly excludes the idea that the money should be placed in the general revenue fund and be subject to payment only by legislative appropriations. Nor do we think that the provisions of articles 4371 and 4386 of the Revised

36

> Civil Statutes, as amended, Vernon's Ann. Civ.
> St. arts. 4371, 4386, control this case, or
> that the Legislature intended, by the enactment
> of those two articles, to amend or change the
> mode of procedure described in articles 3644 to
> 3660. The clear purpose of the law, as we con-
> strue it, is that the treasurer shall keep a re-
> cord of such funds, and be prepared to pay clai-
> mants the amounts due them when the law has been
> complied with. In other words, the State Treas-
> urer becomes a custodian or trustee by virtue of
> the articles of the statutes. Smith et al. v.
> Paschal et al., Tex. Com. App., 1 S.W. 2d 1086."

As the Court points out, Article 3282, dealing with
the seizure and sale of escheated personalty, speaks in terms
of a payment into the "State Treasury," rather than in terms
of a payment to the "State Treasurer." Moreover, Article
3285 provides:

> "The Comptroller shall keep an account of
> money paid into the treasury, and of lands vested
> in the State under any provision of this title."
> (Emphasis added)

Since the Court placed such stress on the use of the
word "treasurer" in the statutes involved in Manion v. Lockhart,
supra, and distinguished such statutes from those requiring pay-
ment into the "treasury," the inference can readily be drawn
that the difference in terms is decisive of questions of the
type under consideration and that use of the word "treasury"
in the escheat statutes necessarily precludes the idea of a sus-
pense account in connection with escheated funds.

However, we are unwilling to make this inference from
the language of the Court. The quoted portion of the Court's
opinion is plainly obiter dicta directed at refutting an argu-
ment of counsel and predicated on the assumptions of such coun-
sel. Moreover, in deciding this case the Court said:

> "A careful analysis of the objects sought to
> be attained by the passage of these articles, 3644
> to 3660, clearly excludes the idea that the money
> should be placed in the general revenue fund and
> be subject to payment only by legislative appro-
> priations . . . . The clear purpose of the law, as

we construe it, is that the treasurer shall
keep a record of such funds, and be prepared
to pay claimants the amounts due them when the
law has been complied with . . . ."

The same "clear purpose" is, we feel, evidenced by the escheat statutes. Indeed, a comparison of those statutes with the statutes relating to unclaimed estates reveals that the mechanisms established for refunds in the two cases are virtually identical. Consequently, notwithstanding the implications of the dicta in Manion v. Lockhart, we feel that the purposes of the escheat statutes can fully be accomplished only by depositing escheated funds and the proceeds from escheated property in a suspense account until such time as the title of the State thereto becomes complete and irrevocable.

We concur with your belief that the deposit of these funds should be made by the Commissioner of the General Land Office.

Trusting that the foregoing fully answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

APPROVED JUL 13, 1942

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

By R. Dean Moorhead

R. Dean Moorhead
Assistant

RDM:ff


APPROVED
OPINION
COMMITTEE
BY Blob
CHAIRMAN